# Miller *versus* Hershey.

1. The facts out of which a question of law arises, must be seen in the record proper or in the superadded record, the bill of exceptions; and this applies as well to reserved questions as to others.

2. Facts arising upon evidence can appear on record but by special verdict, case stated or bill of exceptions.

3. Bill of exceptions is the mode to bring the facts on the record in the case of reserved points.

4. The Act of 28th of March 1835, sect. 5, giving the court the power of reserving, &c., questions of law, authorizes rendering judgment *non obstante veredicto*, and the legal presumption follows that the judgment is right.

[Miller *v.* Hershey.]

5. Without a bill of exceptions the Supreme Court cannot examine into alleged error, and the judgment below, though contrary to the verdict, must stand on the statute authority to render it.

6. Repairs and alterations of a building, which do not fairly change its exterior into a new structure, cannot confer a lien.

7. It is the extent and character of the alterations, and not the change of purpose, which makes the difference between an old and new building.

8. Newness of structure in the main mass of the building—that entire change of external appearance which denotes a different building from that which gave place to it, though some parts of the old may have entered into it— is that which constitutes a new building, as distinguished from one altered.

9. The building should present that external change indicating newness of structure, which would put purchasers and lien-creditors upon inquiry.

May 18th 1868.   Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Dauphin county* : Of May Term 1867, No. 95.

This was a scire facias on a mechanics' lien to November Term 1863 by William Miller, who survived David Fellenbaum, against the assignees of Christian Hershey and wife, owners, and Elias Doner, contractor.   The lien was filed, October 26th 1860, for machinery to the amount of $504.69; the building was described as "a two storied stone grist mill, 33 feet more or less front on the east, and 30 feet deep, with a water-house at the rear, 10 feet wide, and 36 feet long, with the ground and appurtenances thereto belonging situate," &c.   The claimant had received two dividends from the proceeds of the assigned estate of the owners.

The amount of the claim was admitted to be correct.   The question was whether the structure for which the materials were furnished was a new building.

The evidence was as follows :—

Elias Doner testified: "It was an old fulling-mill transformed into a grist-mill; new lower floor, new roof and new water-house attached; the latter 10 by 32 feet; stone to the level of the ground, then a frame one built up against the other mill; all of these articles were put in the mill, the segment of 26 sections, one large gudgeon, pinion, bolts, and principal pedestal for the bearing of the gudgeons, part of the shaft that runs the burrs from the water-house, a new water-wheel put in, larger in size than the old one, higher and wider than the old one; the dam and head-race built new; the power was all in that water-house; the old mill was about 30 to 36 feet, probably 33 feet; the essential part of the machinery was put in the water-house.   The old building was stone and wood; stone walls to the roof and two stories high; old building remained as before, except new shingles on the old rafters; new roof in that way; lower floor was, I think, entirely new, possibly only the flooring-boards new; the addition made was stone and frame, as high as the second story of the mill; shed

9 P. F. SMITH—5

[Miller *v.* Hershey.]

roof runs up as high as eave of the old mill; the addition is not at gable end; shed roof slants the width of new part; contains large water-wheel, the master cog-wheel, and part of the gearing; the trunk to carry water and the gate; two run of stones in the mill; old one a fulling, new one flouring mill; race and dam raised to give more power; overshot wheel same as this, but not so large; overshot 22 feet; new one 29 feet high; new one wider also."

Andrew Clendennin testified: " Old building of stone was two stories high, about 30 by 33 feet; was a fulling-mill; changed by Hershey to flouring and chopping mill; machinery put in to make that change; put on new shingles, old lath and rafters remained; two new floors put in, first and second; in lower story new joists, no girder. The addition was 10 by 36 feet; shed roof comes down by the other roof; all shingled on straight line; new water-wheel and master wheel in the new addition; puntstock carried out on the roof above new building; the old water-wheel had been on inside of the building; new wheel 29 feet high. It is a different mill from what it was."

Elias Hollinger testified: " My father owned this mill, a two-story stone fulling-mill; water-wheel inside the building; no change in stone wall; roof relaid; additions to one end; frame shed to cover the water-wheel; same as the old water-wheel, except larger; now a grist-mill."

The court instructed the jury that the mechanics' lien must be treated by them as good upon the evidence in the trial, and that their verdict must be for the amount of the plaintiff's claim, *minus* the payments made, to wit, for $525.60, at the same time reserving the point as to whether this is or is not a lien under the evidence in the case. The verdict to be set aside, and judgment entered in favor of the defendants, *non obstante veredicto*, should the court be of the opinion that there is no valid lien in the case.

The court sealed an exception to the charge at the defendants' request.

The court (Pearson, P. J.) entered judgment for the defendants *non obstante veredicto*. No exception was taken to the entering of the judgment, nor was there any bill of exceptions bringing up the evidence.

Entering judgment for defendants was assigned for error.

*W. H. Miller* and *George F. Breneman,* for plaintiff in error.— The facts on which the reserved question arises do not appear on the record: Clark *v.* Wilder, 1 Casey 314; Irwin *v.* Wickersham, Id. 316; Wilson *v.* Tuscarora, Id. 317; Shryock *v.* Waggoner, 4 Casey 430; Winchester *v.* Bennett, 4 P. F. Smith 510. The structure was a new building: Armstrong *v.* Ware, 8 Harris 520; Nelson *v.* Campbell, 4 Casey 156; Lightfoot *v.* Krug, 11 Id. 348; Pretz's Appeal, Id. 349.

[Miller *v.* Hershey.]

*D. Mumma* and *J. E. Heister*, for defendants in error.—As to reserved point, cited Railroad *v.* Gazzam, 8 Casey 340; N. A. Oil Co. *v.* Forsythe, 12 Wright 291. As to building, Summerville *v.* Wann, 1 Wright 182.

The opinion of the court was delivered, August 1st 1868, by

AGNEW, J.—The judgment of the court below, *non obstante veredicto*, is objected to, because the facts upon which the reserved question arises do not appear in the record. A question of law cannot arise in a judicial sense without facts. The facts out of which the question springs must be seen in the record proper, or in the superadded statute record furnished by a bill of exceptions. This is quite as true in the case of reserved questions of law as in other cases, and has been stated in Irwin *v.* Wickersham, and Wilson *v.* Steamboat Tuscarora, 1 Casey 316 and 317, and in Winchester *v.* Bennet, 4 P. F. Smith 510. There are but three modes in which facts arising upon the evidence can find their way into the record—by the finding of a jury, which is a special verdict—by the agreement of the parties, called a case stated—and by the certificate of the court, contained in a bill of exceptions. It is the last mode which is directed by the statute in the case of reserved points. Of course disputed facts cannot be certified against the consent of counsel, but must be decided by the jury. But even then it is still in the power of the court to reserve a question by referring the disputed fact to the jury, and then by incorporating the finding in the bill of exceptions.

In looking into this record we find nothing there upon which the question arose whether the building was a new erection. The instruction to the jury was, that they must treat the lien as good and find for the plaintiff, "reserving the point as to whether this is or is not a lien under the evidence in the case; the verdict to be set aside and judgment for defendant *non obstante veredicto*, should the court be of opinion that there is no valid lien in the case." To this the *defendants* excepted, but not the plaintiff; and when judgment was rendered for the defendants no exception was taken, and no facts certified upon the record. The judge filed an opinion, but this was not excepted to, and forms no part of the record. Doubtless the opinion contains a fair statement of the facts, but it is not certified as a bill of exceptions in form, or as its equivalent. We are also referred to what is printed as the judge's notes of trial. They are not certified, and should we accept them still the question we are asked to decide is not specifically presented. The point reserved was in these words: "whether this (to wit, the plaintiff's claim), is or is not a lien under the evidence in the case." This was a much broader question than the one argued, to wit, whether the building was such a new erection as became the subject of a lien. The claim might not

have been a lien for other reasons. For instance, there was no evidence that the man called "Hershey," who ordered the work to be done, had any estate in the property. The only evidence of ownership found in the notes was, that the property was owned by the father of Elias Hollinger, the only witness who testified to the ownership. And it might also be asked what Hershey, *Charles* or *Christian?* The notes do not inform us. Doubtless all these things were well understood in the court below, but we are now looking into the alleged record to find the facts and the precise question which was reserved. As a court of error, we cannot see what does not judicially appear. Counsel bringing up a record must see that it is properly made up. We do not mean by these remarks to hold rigidly to the *form* of the bill of exceptions. We know that the judges often place upon the record a statement under their hands of the facts on which the reserved question arose, and this has been sometimes accepted as the equivalent of a formal bill, but this is no reason that we should take a case without any certified statement whatever. And I do not say that a question may not be reserved, whether on all the plaintiff's evidence, he has shown any cause of action whatever. But then the evidence must come to us in the same form it would had the court decided the question at the trial. In this case nothing has been legally spread before us to enable us to decide the only question to be determined, to wit, whether the building was such a new erection or rebuilding as became the subject of a mechanic's lien.

If the case stood as at common law there would be a sufficient cause of reversal on the ground that the judgment is repugnant to the verdict. But the 5th sect. of the Act of 28th March 1835, Purd. 338, pl. 16, extended to the several courts of Common Pleas of the state by the Act of 22d April 1863, Pamph. L. 554, confers the express power of *reserving* and deciding questions of law, and consequently of rendering a judgment *non obstante veredicto.* The legal presumption follows that the judgment is right. *Res adjudicata pro veritate accipitur. Omnia præsumuntur legitime facta donec probetur in contrarium.* For the correction of any error the statute gives a bill of exception. Without a bill of exception, therefore, we cannot examine into the alleged error, and the judgment below, though contrary to the verdict, must stand upon the express statute authority to render it. But taking the facts as stated in the paper-book, we think the learned judge was right, that the changes made in the mill did not create such a new erection as to subject it to a lien for work and materials. The authorities are marked by some diversities, yet when all summed up, lead to the conclusion that repairs and alterations of a building which do not fairly change its exterior into a new structure are incapable of conferring a lien. Driesbach *v.* Kellar, 2

[Miller v. Hershey.]

Barr 79, Judge Sergeant said that to constitute a new building there must be a substantial addition of material parts—a rebuilding on another and larger scale; even though some portions of the old are preserved and incorporated into the new. In Landis's Appeal, 10 Barr 379, Judge Coulter said that in the common understanding and language of the people, when we speak of the erection or construction of a house or building, we mean the erection of a new house or building and not the repairing of an old one. And in Armstrong v. Ware, 8 Harris 520, Lowrie, J., said, when the structure of a building is *so completely changed*, that in common parlance it may be properly called a *new building* or a *rebuilding*, it comes within the law. In Norris's Appeal, 6 Casey 127, our Brother Sharswood, then President of the District Court of Philadelphia, said, in an opinion adopted by this court, that it is clear that it is the *extent* and *character* of the alterations, and not the mere change of purpose of the building, which ought to make the difference. The idea which runs throughout all the cases is newness of structure in the main mass of the building— that entire change of external appearance, which denotes a different building from that which gave place to it, though into the composition of the new structure some of the old parts may have entered. This newness of construction must be in the exterior, the main plan of the building, and not in its interior arrangements. This is decided in Summerville v. Wann, 1 Wright 186. There appears to be a good reason for this not only in the fact that the external walls of a building constitute the strongest mark of its identity and are its main part, but also in the notice that the external change furnishes to purchasers and lien-creditors. Mechanics' claims are secret liens until they are filed, and this may be done within six months after the work is done or the materials furnished, and then the lien runs back to the commencement of the building. It is but fair that the building should present to the eye that external change indicating newness of structure which is calculated to put purchasers, mortgagees and other lien-creditors upon an inquiry for liens. A new roof to a building is clearly nothing but a repair, and this was the only change upon the exterior of this mill. So the addition of a shed for the water-wheel makes no change in the mill itself. The claim was filed against the stone mill, not the wooden shed attached. There may be a lien for a new structure added to an old one, such as a kitchen or a side building; as seen in Nelson v. Campbell, 4 Cas. 156, Ligthfoot v. King, and Pretz's Appeal, 11 Casey 348 and 349, and Harman v. Cummings and Wife, 7 Wright 322. But the lien there is for the new structure. Here the lien is claimed for the alterations made in the old structure, chiefly in its interior, which wrought no complete change in the exterior of the mill. It could not be said to be a new structure or a rebuilding.

Judgment affirmed.