## JAMES BONDZ v. PENNSYLVANIA CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LAWRENCE COUNTY.

Argued October 15, 1890—Decided November 3, 1890.
[To be reported.]

1. Where no exception was taken to the refusal by the court below to take
off a judgment of peremptory nonsuit entered, the testimony for the
plaintiff cannot come before the Supreme Court, and the action of the
court below in refusing the motion cannot be reviewed: Tasker v.
Sheldon, 115 Pa. 107.*

2. Facts arising upon the evidence can find their way into the record in
but three modes: (a) By the finding of a jury, called a special verdict;
(b) by the agreement of the parties, called a case stated; and (c) by the
certificate of the court contained in a bill of exceptions: Miller v. Her-
shey, 59 Pa. 64.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 204 October Term 1890, Sup. Ct.; court below, No. 45
May Term 1886, C. P.

On March 11, 1886, James Bondz brought case against the
Pennsylvania Company, to recover damages for injuries to the
plaintiff's person and property, alleged to have been caused by
negligence of the defendant company. The defendant's plea
was not guilty.

At the second trial on November 28, 1888, the following
facts were shown upon the part of the plaintiff:

On the evening of March 2, 1886, about five o'clock, the
plaintiff was passing along a public road near the city of New
Castle, running through what was known as "the Narrows."
On the western edge of the road was a high steep bluff. Along
its eastern side, for a distance of about 1020 feet and between
the road and the Shenango creek, ran the railroad track of the
defendant. Between the railroad track and the public road
stood a high board fence. Nearly 100 feet beyond the northern

---

* See Anderson v. Oliver, post, 156.

Statement of Facts.

end of the fence, the public road turned and crossed the railroad track at right angles, and thirteen feet beyond the crossing, it entered a bridge by which it was carried across the creek.

The plaintiff was driving an empty wagon, drawn by two horses, and was going north toward the railroad crossing. He was familiar with the road and its surroundings, and knew that a passenger train was about due, to come from the south. Before reaching the northern end of the fence, and while distant about 20 or 30 feet therefrom, he stopped his team, stood up in the wagon, and looked and listened. The board fence between him and the railroad, was so high that his view was obstructed thereby, and he was unable to see along the track to the south. Being unable to hear anything indicating that a train was coming, he started his horses on a trot. At a distance of 18 feet from the railroad crossing, he could have stopped and looked along the track toward the south, with an unobstructed view. He kept on, however, without stopping and without turning his head to look in that direction, his attention being diverted by a shifting engine in the railroad yard, north of the crossing. Just as his horses' heads were about on a line with the nearest rail of the track, he heard the rumble of an approaching train, and, looking southward, saw it about 100 feet away from him. Thereupon he whipped up his horses and endeavored to get across the track in front of it, but, as the horses were entering the bridge, one of the rear wheels of his wagon was caught by the train, with the result that the wagon was wrecked, one of the horses was so injured that it had to be killed, and the plaintiff himself was badly injured.

The train in question was backing, as was customary, into New Castle, from a junction not far away. The testimony for the plaintiff tended to show that on that evening it was backing at the rate of from 20 to 25 miles an hour; that there was no person upon the rear platform to keep a lookout or to give signals; that no warning of its approach, by whistle or bell, was given, though the whistle was blown about the time the plaintiff's wagon was struck; and that the public road was so narrow that there would be danger of inability to control a team while a train was passing, if the team were stopped anywhere between the end of the fence and the crossing.

At the close of the plaintiff's testimony, the court Mc-

Opinion of the Court.

MICHAEL, J., on motion of the defendant's counsel entered a judgment of nonsuit, with leave, etc. Subsequently a rule to show cause why the judgment should not be taken off having been argued, the rule was discharged, no exception to the order discharging the rule being sealed for the plaintiff. Thereupon, the plaintiff took this appeal, specifying the order discharging the rule for error.

*Mr. R. B. McComb*, for the appellant.

*Mr. Oscar L. Jackson* (with him *Mr. D. B. Kurtz* and *Mr. F. A. Blackstone*), for the appellee.

Counsel cited, as to contributory negligence : Greenwood v. Railroad Co., 124 Pa. 572 ; Dean v Railroad Co., 129 Pa. 514 ; Aiken v. Railroad Co., 130 Pa. 380 ; McNeal v. Railway Co., 131 Pa. 184.

OPINION, MR. CHIEF JUSTICE PAXSON :

The plaintiff was nonsuited in the court below, and the only assignment of error is that the court erred in refusing to take off the nonsuit. Unfortunately for the plaintiff there was no exception to this refusal. This may seem unimportant, but in point of fact it is vital. The plain reason is, that without such exception the evidence is not and cannot come before us. Without the evidence, it is impossible for us to say whether the nonsuit was properly entered. The office of an exception, as we have repeatedly said, is to bring upon the record something which, without an exception, forms no part of it.

The notes of trial taken below constitute no part of the record, unless made so in the manner pointed out by law. " There are but three modes," said AGNEW, J., in Miller v. Hershey, 59 Pa. 64, " in which facts arising upon the evidence can find their way into the record,—by the finding of a jury, which is a special verdict; by the agreement of the parties, called a case stated; and by the certificate of the court contained in a bill of exceptions." An exception brings up so much of the evidence as bears upon the particular exception. Where there is a nonsuit, an exception to the refusal of the court to take it off brings up the whole of the evidence, for the reason that we must consider all the plaintiff's evidence to de-

Syllabus.

termine whether the nonsuit was properly entered. Hence the value of a bill of exceptions. It determines precisely what the evidence was. The notes of the respective counsel may, and often do, differ materially as to the evidence. But, when a bill of exceptions has been settled by the trial judge, upon notice to the opposite counsel, there is no room for dispute, and we have a right to accept the certificate of the judge as verity. Without such certificate, we have no means of knowing what the evidence upon the trial really was.

In the case in hand, there was no bill of exceptions, and, as a necessary and logical result, the evidence is not before us. There is a mass of evidence printed in the paper-book of appellant, but, under all the authorities, we have no right even to look at it. Where there is no bill of exceptions, we are not at liberty to look at the evidence : Tasker v. Sheldon, 115 Pa. 107. We are aware that a careless practice has grown up in this respect, but we are not disposed to encourage it. In some instances, these matters are not called to our attention, and pass without comment; but, when the point is made, we are compelled to enforce the rule. We do it with the less reluctance, in this instance, for the reason that the appellant's case, as presented, is without merit. We are of opinion that, had an exception been taken, the judgment would have had to be affirmed.

Judgment affirmed.

---

L. ANDERSON v. H. W. OLIVER ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY.

Argued October 15, 1890—Decided November 3, 1890.
[To be reported.]