Argued March 15, 1934.
This appeal by the Duplex Electric Company is from the refusal of the learned court below to enter judgment in its favor in a sci. fa. sur mechanic's lien proceeding.
There is no dispute as to the facts. The Gettysburg National Bank employed contractors to erect an addition and to make certain alterations to its bank building. Part of the improvements consisted of a burglar alarm and hold-up system, which the contractor, on January 21, 1928, engaged the plaintiff to install at a price of $1,500. To secure a balance of $900 unpaid, the claimant filed a mechanic's lien, March 1, 1929, against the bank building, under the Act of June 4, 1901, P.L. 431, § 2 (49 P. S. § 21), averring that the improvements amounted to a substantial addition and a new construction.
The chief defense was that the work done was but an alteration, and that as the mechanic's claim was not filed within three months after the work was completed, it was too late to obtain a lien against the building. The trial judge submitted to the jury the *Page 166 
question whether the improvements constituted alterations or a new construction within the meaning of the act. Later, he held that to be a question of law (Warren v. Freeman, 187 Pa. 455,41 A. 290; Malone v. Hosfeld, 53 Pa. Super. 134), and decided it adversely to the appellant's contention.
The Gettysburg National Bank, prior to the improvements, was a one-story structure with a peaked roof, having a frontage of 45 feet on the north side of York Street, Gettysburg, with a depth of 86 feet, and an interior height of 22 feet. The front and side walls were lined with granite, and in the front was a portico supported by four columns of a height equal to the main building. The rear wall was surfaced with buff-colored brick. The banking room contained a U-shaped counter and occupied the interior of the structure for a distance of 50 or 60 feet from the front entrance, leaving the remaining space for two compartments and a vault, above which was a mezzanine floor. After completion of the improvements, the front of the banking house, with its portico and the original wall, remained the same, with the exception that the wall was raised 5 feet. The peaked roof was torn away and a new slightly sloping roof was substituted therefor. The rear wall of the original building was torn out, the side walls were raised and extended back a distance of 43 feet, and a new rear brick wall was built. The interior was heightened 5 feet and a new ceiling was placed therein. The walls, etc., were redecorated, new furniture and fixtures installed, and a complete rearrangement of the interior facilities was made. As a result of the erection of this addition, and the elevation of the roof therein, there were added 99,400 cubic feet to the 130,000 cubic feet contained in the original building.
Were these additions and alterations so extensive *Page 167 
and of such a nature as to constitute a new construction?
The general rule is that to form a new structure there must be a change in the external appearance and main mass of the building, which results in and indicates a newness of construction. The front wall and the old portico, which was an important feature in establishing its identity, were not disturbed. No one would have any trouble recognizing the present structure as the old one, with its same general character and design. There was no change in the purpose of the building. Business continued to be transacted as usual while the work was being done, with the exception of a brief period. The building continued to be used as a banking institution. These additions and the interior alterations became an integral part of the old building, a substantial and essential part of which remained. The nature and extent of the changes made, the external appearance, and the continual occupancy should have indicated to a lien creditor that an old building was being improved and not a new one constructed. Many years ago, Judge AGNEW gave utterance to the general principle above stated, in Miller v. Hershey, 59 Pa. 64,69, which has been a guide in many subsequent decisions. After reviewing a number of the earlier cases, he said: "The idea which runs throughout all the cases is newness of structure in the main mass of the building — that entire change of external appearance, which denotes a different building from that which gave place to it, though into the composition of the new structure some of the old parts may have entered. This newness of construction must be in the exterior, the main plan of the building, and not in its interior arrangements."
Every case of this type must depend necessarily upon its own particular facts, as buildings and the extent and nature of alterations are practically never *Page 168 
the same. We will not detail the facts in the following cases, but in each of them substantial improvements were made, and the court in every instance held that the structure was not changed into a new building: Dewald et al. v. Woog, 158 Pa. 497,27 A. 1088; Smyers v. Beam, 158 Pa. 57, 27 A. 884; Warren v. Freeman, supra; Kolb v. Ref. Episcopal Church, 18 Pa. Super. 477; Hothersall v. Rust, 18 Pa. Super. 495; Huber v. Rossell et al., 105 Pa. Super. 290, 161 A. 583.
In the light of the facts and the foregoing cases, we are convinced that the work done and material furnished were in the alteration of the bank building and did not enter into the construction of a new structure.
Judgment of the lower court is affirmed.