A. Z. A. REALTY CORPORATION, Landlord, *v.* HARRIGAN'S CAFE, INC., Tenant; JOHN E. HARRIGAN and JOSEPH NAPOLI, Under-Tenants.

(Municipal Court of the City of New York, Borough of Manhattan, Fourth District, September, 1920.)

Lease — termination of, by notice — when payment to tenant as provided by modification agreement not a condition precedent — payment or tender with conditions — summary proceedings to recover possession — when right to proceed not waived.

An agreement in writing modifying a written lease gave the landlords, their executors, administrators and assigns, the right to terminate both the lease and the modification agreement by giving, as provided therein, a three months' prior notice in writing of intention to terminate the same, provided that at the expiration of said notice the lease should cease and also that " thereupon the landlords shall pay to the tenant the sum of fifteen thousand dollars ($15,000)," first crediting against that amount " any sum or sums due to the said landlords for rent, taxes, water rents or otherwise growing out of said lease." *Held,* that the word " thereupon " clearly referred to the expiration of the term, and that payment or tender of said sum was not a condition precedent to the termination of the lease by the giving of the three months' notice. (P. 147.)

The landlords, assuming that the payment or tender of said sum was a condition precedent, upon making a tender of a certain sum representing the difference between $15,000 and certain sums to which they were entitled, and of the part of excessive taxes not yet due, attached as conditions: (1) that the tenant deliver a cancellation of the lease and modification agreement, (2) proof of satisfaction of certain mortgages on the leasehold given after the lease, and (3) proof showing payment of water rents which had become liens upon the premises. *Held,* that the conditions were neither improper nor unreasonable and did not invalidate the payment or tender of the amount claimed to be due the tenant.

After the landlords had given said notice the agent for the collection of rents sent to the tenant a bill for excess taxes and upon receiving a check therefor forwarded the same to the landlords who returned it to the tenant. *Held,* that in the absence of proof that the landlords had knowledge of the sending of the notice or that the agent had authority to waive the effect thereof to terminate the lease, there was no waiver of the landlords' right to proceed under said notice to recover the possession of the premises, and in a summary proceeding brought upon the ground of a holdover the landlords were entitled to an order awarding them possession of the premises.

SUMMARY proceedings.

George D. Zahm, for petitioner.

W. H. Burby (Morton C. Fitch, of counsel), for tenants.

GENUNG, J.   This is a summary proceeding brought upon the ground of a holdover.   Upon the trial the following facts were conceded: Under date of April 25, 1915, the then owners of the premises 415 Lexington avenue, Manhattan borough, New York city, leased the same to John E. Harrigan (named in the precept as " under-tenant "), under a written agreement of lease for a period of fifteen years commencing on the 1st day of May, 1915.   The tenant, having

defaulted in making payment of the amount of rent reserved by the lease, requested an extension of time within which to pay for the same with the result that, on the 22d day of December, 1915, an additional agreement (hereinafter referred to as the modification agreement) was entered into between the landlords as parties of the first part, John E. Harrigan as party of the second part and Harrigan's Cafe, Inc., a domestic corporation, as party of the third part. This modification agreement, after reciting an indebtedness of $1,888.28 owing by John E. Harrigan on account of accrued rent and his request for an extension of time within which to pay the same, made provision to the effect that the amount of this indebtedness, with interest, together with a further sum aggregating $200, representing part of the rent to accrue for the first four months of the year 1917, was to be paid by the tenant in installments of $50 per month, said monthly installments to be added to, and become a part of, the rent due for each month commencing with the month of May, 1918. The modification agreement also conferred upon John E. Harrigan the right to assign the lease to Harrigan's Cafe, Inc., he, however, to continue to be in all respects liable for the full performance of all of the terms and provisions thereof. By the modification agreement, the landlords, their executors, administrators or assigns, were given the right to terminate the original lease, together with the modification agreement, by giving, in the manner as therein provided, three months prior notice in writing of the intention to terminate the same, and thereupon the landlord was to pay to the tenant the sum of $15,000, after first crediting against the same any sums due to the landlords for rent, taxes, water rents or otherwise, growing out of the lease.

On or about the 21st day of January, 1920, the

Municipal Court of New York, September, 1920. [Vol. 113.

A. Z. A. Realty Corporation, the petitioner herein, became the owner in fee of the premises described in the aforesaid lease, acquiring all of the rights of the landlords under the lease and modification agreement. On the 7th day of April, 1920, the petitioner served upon Harrigan's Cafe, Inc., John E. Harrigan individually and Joseph Napoli, an undertenant, in the manner as prescribed by the modification agreement, a notice of its intention to terminate the agreement of lease and the tenancy created thereby three months from the date of the giving of such notice. More than three months elapsed between the giving of the aforementioned notice and the bringing of this proceeding.

Under date of April 28, 1915, John E. Harrigan executed and delivered to one Jacob Ruppert, a domestic corporation, his bond secured by an indenture of mortgage covering the leasehold interest here involved. This mortgage recites an indebtedness of $10,168.53 due to Ruppert from Harrigan, the said principal sum, together with interest thereon at the rate of six per cent, being payable on demand. This mortgage was duly recorded and stands unsatisfied of record.

On or about the 17th day of September, 1915, Harrigan's Cafe, Inc., was incorporated as a domestic corporation, John E. Harrigan having been one of the incorporators, as well as a director, thereof.

Under date of March 14, 1917, Harrigan's Cafe, Inc., executed and delivered to one Smith and another a mortgage covering in part the leasehold interest here involved. This mortgage recites an indebtedness on the part of the mortgagor to the mortgagee in the sum of $8,000 and interest from the date thereof, the said principal sum being payable with interest on demand. This mortgage was duly recorded and

stands unsatisfied of record. There is no assignment of record of the lease from Harrigan to Harrigan's Cafe, Inc.

On the 19th day of November, 1919, the secretary of state of the state of New York issued his certificate to the effect that Harrigan's Cafe, Inc., had complied with the provisions of section 221 of the General Corporation Law of the state of New York, the same relating to the voluntary dissolution of corporations. At the time of such dissolution, John E. Harrigan was a director of the corporation.

Under the terms of the original lease, the lessee, in addition to the stipulated monthly rental payments therein provided, was to pay all taxes in excess of $1,200, which might become a lien on the premises in any year of the term. The tax levied upon the premises in question for the year 1920 amounts to $1,612, one-half thereof having become due and payable on the 1st day of May, 1920, the remaining one-half becoming due and payable on the 1st day of November, 1920. Under date of April 19, 1920, one Stern, a real estate agent employed by the petitioner for the collection of rents, on his own billhead, rendered a bill to Harrigan's Cafe, Inc., and John E. Harrigan for $412, this sum representing the amount of taxes in excess of $1,200 levied upon the premises for the year 1920. On the 1st day of May, 1920, the amount of this bill was paid to said Stern, who thereafter remitted the same, together with his rent collections, to the petitioner.

On the 8th day of July, 1920, the petitioner made a tender of $14,069.31, this sum representing the difference between $15,000, the compensation to be paid to the tenant under the terms of the modification agreement, and the amount claimed by the petitioner to be due to it for rents, taxes, water rents or

Municipal Court of New York,. September, 1920.  [Vol. 113.

otherwise, growing out of the lease, and offered to pay over the amount so tendered, together with such additional sums, if any, as the tenant was legally entitled to receive, upon the tenant's compliance with certain conditions hereinafter mentioned. This tender was refused.

Upon the trial oral testimony was adduced relating to the aforesaid tender as well as an additional and separate tender of $206, this sum representing one-half of the amount of taxes paid by the tenant.

The tenants contend that the landlord is not entitled to succeed in this proceeding for the following reasons: (1) that payment by the landlord to the tenant of the compensation provided for by the modification agreement, or a tender of such payment, was a condition precedent to the termination of the lease-hold term; (2) that the tender made was ineffectual because of the conditions thereto attached and the insufficiency in amount; and (3) that the rendering of the bill for excess taxes for the year 1920 and the payment thereof constituted a waiver by the landlord of its right to terminate the leasehold term at least during the year 1920.

(1) Paragraph 3 of the modification agreement is as follows: '' It is further understood and agreed by and between the parties hereto, that the said lease, dated the 26th day of April, 1915, together with this agreement may be terminated at any time by the landlords or their Executors, Administrators or Assigns, by giving three (3) months' prior notice in writing of the intent to terminate the same, served personally on the Tenant or on his assignee, or by leaving the same affixed to the premises, and at the expiration of said three (3) months' notice this said lease and the term thereof shall cease and determine. Thereupon the Landlords shall pay to the Tenant the sum of Fif-

teen Thousand Dollars ($15,000), first crediting against said Fifteen Thousand Dollars ($15,000) any sum or sums due to the said Landlords for rent, taxes, water rents or otherwise, growing out of said lease."

That a tenant's right to possession is co-extensive with, and dependent upon, a continuation of the term is a well-settled principle of law. The determinative question is, when did the term expire? Was it at the expiration of the three months' notice period, or not until the expiration of said period *and* the payment of the compensation provided for? An agreement of lease possesses no peculiar sanctity requiring the application of rules of construction different from those applicable to an ordinary contract. "A lease like any other contract is to be enforced in accordance with the expressed intention of the contracting parties. If interpretation of its language is necessary, the proper established rules are to be applied." *Orr* v. *Doubleday, Page & Co.,* 223 N. Y. 334, 341. The provisions of the modification agreement here involved are not ambiguous, but are plain and simple, and in unequivocal words provide that " at the expiration of said three months' notice this said lease and the term thereof shall cease and terminate." While provision for payment by the landlord to the tenant of certain moneys is contained in the same paragraph of the agreement, the time when the obligation to make such payment arises is definitely fixed. It states that " *Thereupon* the landlord shall pay * * *." This clearly refers to the termination of the term. Under the interpretation most favorable to the tenants of the word " thereupon," the obligation on the part of the landlord to pay arises immediately upon the termination of the term. But even this interpretation cannot avail them in withholding possession. It requires the happening of one event, namely, the

Municipal Court of New York, September, 1920. [Vol. 113.

termination of the term, before the other event, namely, the obligation to pay, can spring into existence. The actual termination of the term of necessity precedes the obligation to pay. But the ending of the term *ex proprio vigore* brings to an end the right to possession and, with the right to possession gone, the tenants cannot legally justify a further occupancy of the premises. The condition precedent to this result, namely, the giving of the notice and the expiration of the time provided therein having actually come to pass, the term by the very force thereof ceased and determined. The continued retention of possession after the expiration of the notice period constituted the tenants mere holdovers conferring jurisdiction upon this court in a summary proceeding for their removal. *Miller* v. *Levi*, 44 N. Y. 489; *Cochran* v. *Anderson*, 111 Misc. Rep. 632; *Childs Company* v. *Burke*, 110 id. 103.

The cases of *Dierig* v. *Callahan*, 35 Misc. Rep. 30, and *Douglaston Realty Co.* v. *Hess*, 124 App. Div. 508, relied upon by the tenants, are not controlling. In these cases the lease, in unmistakable terms, made payment of the cash consideration a condition of the termination of the term. Furthermore, in these cases the amount of compensation to be paid was either definitely fixed by the very terms of the agreement or the amount thereof within the knowledge of the party who was to make the same. Nor are the cases of the type of *Van Beuren* v. *Wotherspoon*, 164 N. Y. 368; *Paine* v. *Rectors, etc., of Trinity Church*, 7 Hun, 89, and *Sammis* v. *Town of Huntington*, 104 Misc. Rep. 7, in point. These cases merely recognize the principle that where a lease for a term of years contains a covenant on the part of the landlord that at the expiration of the term the lessee shall be paid the appraised value of the buildings erected by him

upon the premises *or* a new lease at an appraised rent shall be granted, the lessee, at the expiration of the original term, is entitled to retain possession of the premises until the landlord performs his covenant. In cases of that type the provision is that the tenant shall be paid *or* a new lease shall be given to him. They present an alternative and the tenant is entitled to the performance by the landlord of one or the other. In the instant case no alternative provisions are found in the lease. Nor is any provision therein contained which entitles the tenant to retain possession of the premises until the compensation provided for is actually paid.

The lease here involved further imposes upon the tenant the obligation to make repairs. A failure to comply with this obligation would unquestionably entitle the landlord to offset against the compensation to be paid the damages sustained by reason thereof. In the event of an inability to amicably adjust the amount of such damages, is the tenant to be permitted to withhold possession indefinitely and until such time as this controversy can be legally adjudicated? Or is the landlord bound to accede to every demand of the tenant pending a protracted litigation to determine the correctness of the respective contentions, at the peril of being deprived of the possession **of** the premises? If such be the case, the tenant, by advancing the claim that the amount of compensation offered him by the landlord did not meet with his conception as to what should be paid, could thereby force the landlord into litigation and thus protract the period of occupancy. But to adopt such a construction would be to subvert the very object of the giving of notice and necessitate the doing of violence to the plain ordinary language employed by the parties in their agreement.

(2) Even though it be assumed for argument's sake that tender of the compensation due the tenant was a condition precedent to the termination of the term, the court is of the opinion that the tender made was sufficient not alone in amount, but, furthermore, that the conditions thereto attached were neither improper nor unreasonable. These conditions were as follows: (a) A surrender of the premises and delivery of a cancellation of the original agreement of lease and the modification agreement; (b) proof of satisfaction of the mortgage incumbrance upon the leasehold interest heretofore mentioned; and (c) proof showing payment of the water rents which had become a lien during the unexpired term.

(a) It stands to reason that under no circumstances would the tenant be entitled to receive payment of the compensation provided for and still to retain possession of the premises. Nor can it be said that the landlord was not entitled to be placed in such a position that it could satisfy the world of its right in the premises free from any possible claim therein on the part of the tenant or any person who might claim an interest in and to the term under or through him.

(b) *The Ruppert Mortgage.* When Harrigan executed and delivered this mortgage, he thereby created a lien in Ruppert's favor upon the very leasehold term which, by the modification agreement, he conferred upon the landlord a right to terminate upon giving the prescribed notice. All that Ruppert acquired, however, was a lien upon the unexpired term provided for by the lease, a lien which would come to an end upon the payment of the indebtedness due. It appears from the mortgage that this indebtedness was payable on demand, thus placing Harrigan in a position where he could at any time discharge the same. The Ruppert mortgage having been executed

prior to the modification agreement, the same was in no way affected thereby. The petitioner makes no claim that the exercise of the right to terminate the lease in any way impaired Ruppert's security. What it claims is that when Harrigan entered into the modification agreement, he obligated himself, so far as the landlord was concerned, in the event of an exercise of the right to terminate the lease, to pay off this mortgage, or to make some arrangement whereby the lien of the same would be removed from the leasehold. With this contention the court is inclined to agree. The purpose in giving the three months' notice was not merely to have Harrigan physically removed from the premises, but to legally and effectively terminate the term, together with every interest or right created by the lease (other than to receive the compensation provided for) not alone as against Harrigan, but as against every other person who might claim an interest in and to the term under or through him. To hold that the landlord was obligated to pay the full amount without regard to the Ruppert claim would mean that notwithstanding the fact that Harrigan was paid this sum, yet the term would not cease and determine, for it would necessarily have to be kept alive, in order to preserve the security to which, under the terms of the mortgage, Ruppert would have the right to resort, should payment of the indebtedness thereby secured not be made.

Furthermore, paragraph 11 of the original lease obligates the lessee to " pay and discharge all liens and obligations of any nature and kind whatsoever which shall attach to or be imposed upon said premises or to the leasehold created or incurred by him." This provision clearly obligated the tenant to free the premises of the claim of the Ruppert mortgage.

Not alone was the petitioner entitled to perform-

ance by the tenant of paragraph eleventh of the lease but, as it was essential that the Ruppert incumbrance be disposed of in order to effectively end the term, it had every right to exact as a condition for the payment of the full compensation that proof be furnished of the discharge of this mortgage incumbrance upon the leasehold.

Counsel for the tenants argue that it does not appear that any one except the petitioner demands that payment be made of this mortgage, and, being a stranger to the mortgage transaction, it is without right to demand or compel such payment, by reason whereof any tender with such condition attached is worthless. They further argue that if the Ruppert mortgage were not due not even Harrigan, the mortgagor, could compel Ruppert to accept payment thereof and execute a satisfaction piece of the same. While this might be true, yet, as the debt is one payable on demand, the question is here of no importance. The very argument advanced by counsel in support of this contention, however, lends color to the correctness of the conclusion that the payment of the agreed compensation was not a condition precedent to the termination of the leasehold term. If the indebtedness secured by the Ruppert mortgage did not mature until say five years hence and Ruppert would not consent to an earlier payment thereof, as would be its legal right, payment at this time of the full compensation to the tenant would not effectuate an ending of the term, for legally the term would be continued in order to afford Ruppert the advantage of the lien created in its favor by the mortgage. While, as against the tenants, the petitioner might acquire physical possession of the premises, yet this possession would be subject to be divested in favor of a purchaser upon a sale in foreclosure proceedings

brought by Ruppert in the event of a failure on the part of the tenant to pay the debt secured by the mortgage upon its due date. Not alone would such a purchaser become entitled to possession, but his possession, assuming compliance on his part with the lessee's covenants under the lease, would be continued during the still unexpired part of the original fifteen year term, namely to the 30th day of April, 1930. The anomalous situation would then be presented of the petitioner having in all respects complied with its obligations under the modification agreement, and yet the term being continued for the entire period of time originally provided. In such a case only by payment by the petitioner of the Ruppert mortgage indebtedness when due could such a result be avoided. In short, the petitioner would be called upon to pay Harrigan's debt to Ruppert. The application of no rule of construction to the language found in the modification agreement would justify ascribing such an intention to the contracting parties.

*The Smith Mortgage.* This mortgage on its face represents a valid existing lien. Being a matter of record and standing unsatisfied, the petitioner is put upon notice as to this claim. The tenants contend, however, that as the lease was never assigned of record to Harrigan's Cafe, Inc., the mortgage, in so far as it purports to effect the same, is void and because thereof Harrigan cannot be called upon to produce proof of its satisfaction. The conceded fact is that no assignment from Harrigan to the corporation appears of record. The recording of the assignment, however, was not an essential pre-requisite to the validity thereof as between Harrigan and the corporation. The mere fact that Harrigan is now in possession of the premises is not controlling, for the corporation having been dissolved and, therefore, no

longer legally existent so far as being authorized to carry on business, it may well be that it had redelivered possession of the premises to him.

From the conceded facts it appears that Harrigan was both an incorporator and a director of Harrigan's Cafe, Inc. The corporate acknowledgment attached to the mortgage is to the effect that it was executed in pursuance of the order of its board of directors. The mortgage recites that the lease had been acquired by the corporation through *mesne* assignments from Harrigan. If the petitioner made payment to the tenant of the compensation provided by the modification agreement, Smith could bring an action against it making claim that while, under this agreement, to which the mortgage was necessarily taken subject, the right existed on the petitioner's part to terminate the leasehold interest, yet upon such an event happening, the money payment therein provided would be substituted in the place of the leasehold interest as security for the debt. Upon the trial of such action, unless the petitioner could establish either that the corporation had in fact acquired an interest in the leasehold, or that Harrigan was estopped in equity from contending to the contrary, Smith would be entitled to judgment against the petitioner for such part of the $15,000 as was not required to liquidate the Ruppert claim and such further deductible items which the petitioner under the lease had the right to make. The petitioner in consequence would be called upon to pay the amount of the Smith claim in addition to such sum as it had already paid to the tenant. Obviously, it would be highly unreasonable to exact such payment from the petitioner and no rule of law is cited by counsel that requires it.

Even if it be assumed for argument's sake that there was no formal legal assignment of this lease to

the corporation, Harrigan, by reason of his close affiliation with the corporation, might well be estopped in equity from contending as against Smith that the corporation had never acquired an interest in the lease. It is a well-settled doctrine that where one of two innocent parties must suffer from the acts of a third person, the loss must fall upon him who has enabled the third party to do the injury. Through the very instrumentality, namely, the corporation which Harrigan as an incorporator assisted in bringing into existence and in the management of which, as a director, he had a voice, this claim upon the leasehold found its origin. Having thus by his own act in part at least brought about this condition of affairs, he is in no position to compel the petitioner to ignore the Smith claim and to foist upon it the obligation of defending an action brought thereon with the possibility of having judgment rendered against it, thus being compelled to pay a sum in addition to the amount fixed by the modification agreement.

(c) In addition to the monthly rental payments, the tenant was to pay all water rents which shall become a lien during the term. As the tenant, under the lease, was obligated to make payment of these water rents direct, it was he who had in his possession the very proof showing compliance on his part with this provision. The request on the part of the petitioner for such proof was in consequence not unreasonable.

Counsel for the tenants further contend that the tender was insufficient in amount because the petitioner gave itself credit for the unpaid balance of the back rent, payment of which, under the terms of the modification agreement, was to be made in deferred monthly installments of fifty dollars each. Their claim is that the petitioner was entitled to

Municipal Court of New York, September, 1920.   [Vol. 113.

deduct only rent then due and that no part of the sum
so deducted represented rent then due.   To adopt this
contention necessitates construing the word *" due "*
as meaning something payable because of the arrival
of the time set or agreed upon.   This word, however,
is not limited to this single meaning, but can also be
properly used as indicating something *owing.*   That
the parties did not intend to use the word in the
narrow and restricted sense contended for by the
tenants, but in the broader one and as indicating
something owing, is made apparent when considera-
tion is given to the agreement as a whole.   In the
2d paragraph thereof provision is made that " The
said sum of One thousand Eight hundred and
eighty-eight dollars and twenty-eight cents ($1888.28)
together with interest and said water rents from
the time that each instalment thereof becomes due,
and also said sum of Fifty dollars ($50) per month
with interest on each instalment, from the time that
the same becomes due, shall be paid as follows, etc."
To adopt the tenants' interpretation of the word
" due " would necessitate ascribing to the parties an
intention to insert meaningless terms in this para-
graph of the agreement, for, under such interpreta-
tion, if the tenant made the installment payments on
the deferred payment date, no interest could attach.
If not so made, the law automatically would impose
the obligation to pay interest thereafter.   It clearly
appears from the preambles of the agreement that
the tenant, at the time of the execution thereof, was
justly indebted for rent in the sum upwards of $1,800,
and that he sought to have payment of this indebted-
ness, as well as a part of the rent which was thereafter
to accrue, deferred for a period upwards of a year.
Reading the 1st and 2d paragraphs of the agreement
in conjunction with each other, it is apparent that

interest, computed from the time each installment of rent became payable under the terms of the original lease, was to form a part of the amount, the payment of which was, by the terms of the agreement, to be deferred. It would be most unreasonable to assume that the parties, after thus providing for interest, would thereafter nullify this very provision by incorporating in the very same paragraph of their agreement the word " due " intending that this word should be interpreted in the restricted sense contended for by the tenants. Construing the word in the sense of indicating something owing, all of the provisions of the agreement are made effective. Unless the context requires otherwise, it cannot be presumed that the parties intended using this word in a different sense in the 3d paragraph of their agreement. There is nothing, however, in the context requiring a different interpretation of the word.

While provision is made to the effect that the monthly installments were to be added to, and become a part of, the rent due for each month, the purpose underlying same is manifest. Without it, had default been made by the tenant in meeting any of these deferred monthly installment payments, the landlord could only have resorted to an action at law to recover the same. No right would have existed to regain possession of the premises through summary proceedings.

3. To constitute a waiver, there must be an intentional relinquishment of a known right. *Clark* v. *West,* 193 N. Y. 349, 360. In *Matter of City of Rochester,* 208 N. Y. 188, 197, it was said: " Waiver is usually a matter of intention as indicated by the language or conduct, and knowledge, actual or constructive, of the existence of the right or condition alleged to have been waived is an essential prerequisite to its relinquishment." So also must all of the facts be known to the

party against whom the waiver is to be enforced prior to the time of the waiver. *Babcock* v. *Pacific Mutual Life Ins. Co.*, 36 Misc. Rep. 306; *Matter of Schoelkopf*, 54 id. 31. In *Alseas A. P. C. Works* v. *Degnon Construction Co.*, 222 N. Y. 34, the court, referring to the subject of waiver, said: "It is essentially a matter of intention. Negligence, oversight or thoughtlessness does not create it. The intention to relinquish the right or advantage must be proved. * * * The evidence must have probative force sufficient to prove that there was in fact an intention to waive the right or benefit — a voluntary choice not to claim it."

It appears that one Stern, a real estate agent employed by the petitioner to collect rents, rendered to Harrigan's Cafe, Inc., and John E. Harrigan, on his own billhead, a bill for excess taxes for the year 1920, and that the amount thereof was thereafter paid to him. There is nothing in the evidence to indicate that either Alkus, the president of the petitioner corporation, who gave notice of the intention to terminate the term on its behalf, or any of petitioner's officers, had knowledge that Stern was sending this bill and accepting the check in payment thereof. Nor is there any evidence that Stern, when sending the bill and accepting payment thereof, had knowledge that notice had been given by the petitioner of its intention to terminate the term. Nor is there any evidence showing that authority existed in Stern to waive the effect of the notice of termination. It appears that when the attention of petitioner's officers was directed to the fact of this payment having been made, they communicated with counsel, and thereafter made tender of payment of that portion of the excess taxes to which petitioner was not entitled. Waiver being an affirmative defense, the burden of establishing it was with the tenants. The evidence adduced not alone fell short of establishing

the essential elements necessary to constitute a waiver, but on the contrary established that in fact there was no intention upon the petitioner's part to relinquish any of its rights under the notice of termination.

The petitioner is entitled to a final order awarding to it possession of the premises. Five days' stay of execution will be granted to the tenants.

Ordered accordingly.