In the Matter of the Application of RALPH BALDUCCI, Land-
    lord, Respondent, for the Removal from Certain Premises
    of HERMAN RAKOV, Tenant.

LENA RAKOV, Appellant.

Third Department, January 5, 1921.

**Landlord and tenant — summary proceedings — lack of jurisdiction
    because proceedings are not authorized cannot be raised for first
    time on appeal — proceedings to dispossess tenant for non-pay-
    ment of rent and failure to perform covenants of lease — notice to
    tenant — violations of lease before plaintiff acquired property —
    knowledge by plaintiff of violation — right of court to deny dis-
    possession and fix compensation where violations not willful.**

The objection that the court did not acquire jurisdiction of summary pro-
    ceedings brought to recover the possession of real property for non-pay-
    ment of rent and violations of the covenants of the lease, because the pro-
    ceedings were not authorized under section 2231 of the Code of Civil
    Procedure, cannot be raised for the first time on appeal.

The proceedings having been brought to recover possession of real property
    and not to recover the rent, after default in the payment of rent and
    failure to perform the covenants of the lease, and after the service of the
    three days' notice, they were maintainable under section 2231 of the Code
    of Civil Procedure, and the fact that the landlord gave the tenant twenty-
    one days' notice should not vitiate the notice.

A landlord and tenant may agree as to what shall constitute a breach of the
    covenants of the lease, and a breach of the covenants is available to the
    landlord in summary proceedings instituted under said section.

The fact that some of the acts of commission and omission which constitute
    a breach of the lease were committed before the plaintiff acquired the
    property, and the further fact that the plaintiff knew of such changes in
    the electrical equipment of the building but did not know the effect
    thereof until notified by the board of fire underwriters, does not con-
    stitute a defense to the proceeding. Especially is this true since the tenant
    neglected and refused to comply with the request of the landlord to put
    the electrical equipment and other things affecting the fire risk in the
    condition they were before the changes were made.

The proceeding being one for the recovery of possession of real property the
    court does not have the power to refuse to grant a warrant of dispossession
    on the ground that the violations of the lease were not willful and that,
    therefore, compensatory damages only ought to be awarded.

APPEAL by Lena Rakov from an order of the County Court
of the county of Madison, entered in the office of the clerk
of said county on the 16th day of April, 1920, awarding posses-

sion of certain premises in the village of Canastota, N. Y., to the respondent.

*Nash, Britcher & Eckel [George B. Russell* and *John F. Nash* of counsel], for the appellant.

*Campbell & Woolsey [R. D. Woolsey* of counsel], for the respondent.

KILEY, J.:

On the 19th day of September, 1914, William Sherwood and John Sherwood leased to Herman Rakov " The Theater, known as the Sherwood Theater, including the auditorium, stage, dressing rooms and passageway leading from the stage to the dressing rooms, located in the new Sherwood Block on the west side of Peterboro Street in the village of Canastota, New York, together with the use, in common with other tenants of the block, of the lobby leading from Peterboro Street to the auditorium; also the use, in common with other tenants of the block, of the stairway and hall leading from Peterboro Street to the box of said Theater on the second floor."   The term under said lease was to commence and did commence September 21, 1914; it was for a period of five years, to end September 20, 1919. The rent reserved in the lease is $100 a month for occupation and $10 a month additional " from the time the fire is started in the heating plant in the fall of each year until it is allowed to go out in the spring of each year during the term of this lease." It was stipulated that at the commencement of the term " all electric fixtures and electric bulbs are in perfect condition." It is further provided in said lease: "And further agrees to save the parties of the first part free, clear and harmless from any and all damages, actions or causes of action that may result from any cause by reason of the conducting of the said theater during the term of this lease."   Again, it is further provided as follows: " It is further understood and agreed, that should the party of the second part at any time fail, neglect or refuse to perform the covenants herein specified for him to perform, or either of them or fail to pay his rent or any part thereof, at the time it shall become due and payable, the parties of the first part at their option may immediately terminate this lease upon three days' notice and remove said party of the second

part and all persons in his employ from the said theater, together with all equipment or other property belonging to him." Added to the lease and executed by the parties to the lease, at the same time, is a separate agreement which provides that the lease may be renewed for an additional period of five years on the same terms and conditions, by giving the lessors notice of such intention six months before the termination of the lease. On the 19th day of September, 1914, by an instrument in writing, the lessors consented that said lease be assigned to Lena Rakov, reserving and not waiving any of their rights under said lease. On October 23, 1917, the respondent purchased of the Sherwoods the premises in question, including the theater, and succeeded to all of their rights under said lease. Herman Rakov or his wife, Lena Rakov, aforesaid, was in possession under the lease. On January 17, 1919, Herman Rakov served notice upon respondent of his intention to renew the lease for an additional period of five years under the terms and conditions of the then existing lease. On March 15, 1919, the appellant and Herman Rakov served a similar notice upon respondent. At the time Herman Rakov first entered into possession of the theater under his lease, the electrical wiring, equipment, operator's booth for moving pictures, their and its location and arrangements had been inspected by an electrical inspector for the Underwriters Association of the State of New York, and had been passed and found up to the standard, so that the usual premium rates prevailing in that community were applicable to this property. The evidence shows that previous to the 1st day of November, 1919, the fixtures and wiring had been changed by the tenant; that uninsulated flexible cords of varying lengths were put in and used; that precautions laid down by the Underwriters Association to prevent fire and the spreading thereof to other parts of the building were disregarded; that the top or roof of the operator's booth, in which the apparatus for projecting pictures upon the screen or canvas, made of and completely inclosed in asbestos, so that any fire originating therein is confined to the booth, had been removed (this after respondent had acquired the property); that no sand in pails or other receptacles was kept in the booth as required. Thirteen dollars rent due for maintaining fires, in accordance with said

lease, during the fall of 1919 and before the 1st of November, 1919, was not paid and payment by the tenant was refused. Respondent did not know of these omissions and commissions, except the non-payment of rent, until he was notified that the rate on his insurance had been raised so that it was costing him ninety cents a hundred in advance over what it was before the above conditions were created or allowed to exist. As soon as respondent learned of them he asked the tenant to replace the electrical fixtures, wiring and apparatus in the same condition as they were before the changes were made. This the tenant neglected and refused to do, except in a few minor details. The condition of the booth which caused fifty cents a hundred dollars of the raise in premium on insurance was not corrected at the time of the trial. On the 1st day of November, 1919, the landlord, as petitioner, and respondent herein, served or caused to be served upon the tenant the following notice:

" Please take notice that whereas, you are occupying and operating the Theater or Moving Picture Show in the Sherwood block on the west side of Peterboro Street in the Village of Canastota, N. Y., in pursuance of the terms of the lease made and executed on the 19th day of September, 1914, between William Sherwood and John Sherwood and yourself, and

" WHEREAS, said lease contains a provision giving the owner thereof the right to terminate the lease in case you fail, neglect or refuse to perform the covenants contained in said contract, and

" WHEREAS, you have heretofore failed, neglected and refused and still fail to perform said covenants, the undersigned, in pursuance of the option given him according to the terms of said lease, hereby cancels and terminates the same and hereby gives you notice that you must remove from said premises on or before the 21st day of November, 1919.

                    [Signed] " RALPH BALDUCCI.
" Dated CANASTOTA, N. Y., *November 1st*, 1919.
     " To HERMAN RAKOV."

There is no assignment in the record of this lease from Herman to Lena Rakov, but there is a stipulation that the

Third Department, January, 1921.          [Vol. 195.

proceedings may be had and maintained the same as if she had been named instead of Herman Rakov. The tenant did not vacate the premises, and on November 22, 1919, the respondent made and filed his petition for the order of removal of the tenant under chapter 17, title 2, of the Code of Civil Procedure as authorized by section 2231 of that Code. The tenant filed and served an answer; upon the issue thereby raised a trial was had resulting in the order appealed from to this court. Appellant's first contention is that the court did not acquire jurisdiction because the proceedings were not authorized under section 2231 of the Code of Civil Procedure. Passing that for the moment, let us see if he is in position to raise the question on this appeal. The stipulation settling the case provides that in addition to the printed record there shall be furnished for the use of the court upon this appeal the affidavits and papers used by appellant upon his motion for a new trial, after decision, before the County Court; that has been done; nowhere in the record is this question raised. The trial proceeded upon the theory that the petition and answer made the issue and it was so tried; neither by answer nor motion before or during the trial, or at the close of the evidence, was the question raised, as to jurisdiction, which is urged here. When petitioner rested his case counsel for appellant made the following motion: " I move for a dismissal of this proceeding, upon the ground the plaintiff has failed to sustain the burden of proof upon him to show there is any violation of this lease, or any violation of landlord and tenant upon the statute." At the close of the evidence appellant's counsel said: " I renew my motion for a dismissal of the complaint." Both motions were denied. These were the only motions made where it can be claimed that the question was raised; it was not raised by these motions. On the motion for a new trial the affidavits admit that it was not raised; it is tried, in these affidavits, to have it appear that it was faintly or remotely, perhaps obscurely would be the better term, raised. Such was not the fact, so that we have the case tried on the theory that there was no such question to be raised, and that a decision upon the merits, as disclosed by the facts, was all that was sought. It is too late to raise the question now, even if it were of advantage to the appellant, which it is not,

and is not tenable. Let us assume it was raised. The court found upon sufficient evidence that the thirteen dollars back rent was not paid. Subdivision 2 of section 2231 of the Code provides, speaking of the tenant: " Where he holds over, without the like permission, after a default in the payment of rent, pursuant to the agreement under which the demised premises are held, and a demand of the rent has been made; " then follows the disjunctive " or " followed by the provision for a three days' notice. If the tenant were not in default after the demand made by the landlord, which was made and so found upon sufficient evidence by the court, and payment refused by the tenant, which was also found by the court upon sufficient evidence, then the notice hereinbefore set forth put him in default. The lease provides that for any default in performance, viz., the payment of rent when due or a failure to save the landlord from damage, he at his " option may immediately terminate this lease upon three days' notice." The giving of the notice terminated the lease; the three days is grace given the tenant to move. In this case the notice was twenty-one days and it is urged that the tenant was prejudiced because it was not made three days instead of twenty-one days. We fail to see where the notice served was disadvantageous to the tenant because he was given a longer time to move, viz., twenty-one days. This proceeding was not brought for the recovery of rent, but solely to recover possession of the premises described in the petition; and, after default in payment of rent and failure to perform the covenants of the lease, and after the service of the notice, was maintainable. (*People ex rel. Terwilliger* v. *Chamberlain*, 140 App. Div. 503.) It is urged that summary proceedings do not lie under section 2231 upon the further ground, presumably, because a failure to perform the covenants agreed to be performed by the tenant in this lease is not specified in that section. The answer to that argument is that the landlord and tenant can, and in this lease did, agree what should constitute a breach of the covenants. The cases hold that such breach is available to the landlord in summary proceedings. (*Miller* v. *Levi*, 44 N. Y. 489; *Matter of Szpakowski*, 166 App. Div. 578.) A well-considered opinion on the question involved here is reported in *Martin* v. *Crossley* (46 Misc. Rep.

254).   The rule stated in 44 New York, 489 (*supra*) seems to
have been followed and cited with approval quite generally.
(*Schreiber* v. *Elkin*, 118 App. Div. 244; *Scheele* v. *Waldman*,
136 id. 679.)   The tenant seems to assume that such acts
of commission and omission as give rise to respondent's com-
plaints occurred before he acquired the property, and that he
took the property loaded with such defects, if they existed, and
has no remedy in law by reason thereof.   The evidence shows
that the most serious breach of the contract occurred after
respondent took title, viz., the removal of the top or roof of
the asbestos booth; for that fifty cents a hundred was added
to the premium rate he had to pay for his insurance.   Some
uninsulated flexible cords were introduced in the electrical
system, the presence of sand in the booth was omitted, and the
non-payment of the rent found due, were all after Balducci
purchased the property.   It is further urged that respondent
knew of those changes and by not forbidding them he waived
his right to complain.   He may have seen some of those
changes, but he did not know the effect.   It appears that he is
not possessed of the technical knowledge required to determine
the menace of bare wires, uninsulated flexible cords, and open
asbestos booths where electrical equipment is operated.   He
cannot be held to have consented to what he did not know.
Even the Underwriters Association has to employ an electrical
inspector to fix the hazard and apportion insurance rates
accordingly.   The landlord received his first notice when he
was called upon to pay at the rate of $180 extra insurance
premium because of the violation; then he did act; he asked
the tenant to put the system in the same condition in which it
was before the changes were made.   The neglect and refusal
of the tenant to comply with such request were reasons
(breach of contract) that justified this proceeding.   The
suggestion that the trial proceeded along lines similar to those
followed in an ejectment action is not far afield; but who is
responsible for the theory and method and subsequent course
of the trial until a decision was reached?   One will search this
record in vain for a specific motion or objection where either
the procedure or practice is assailed.   By common consent
the issues were joined and by common consent they were
developed by evidence relevant to such issues; the decision

of the court was urged by each in his favor, upon the evidence so produced, and a decision of the court was had before the theory, practice and procedure now urged were advanced. It is urged by appellant that if this court shall sustain the order granted against him, the evidence justifies a finding that the breach upon which the proceedings were based was not willful, and that some other compensation than dispossession should suffice and be satisfactory to the landlord. As before observed, this is not a proceeding for rent, nor for money damages; there is no basis upon which we can fix compensatory damage to the respondent and at the same time uphold appellant's right of occupation under the lease.

The order should be affirmed, with costs.

Order unanimously affirmed, with costs; H. T. KELLOGG, J., not sitting.