[No. 17978.   Department Two.   December 10, 1923.]

## CARL W. ISAKSON, *Respondent*, v. UNITED FISHERMAN'S PACKING COMPANY, *Appellant*.[1]

SHIPPING (8)—BREACH OF CHARTER BY OWNER OR MASTER—WAIVER. Breach of a contract for the use of a gas boat and the services of her owner as master, warranting the charterer in terminating the contract is not shown by proof of the master's insubordination and quarrelsome and abusive conduct impairing the usefulness of the boat and injuring the business, where it appears that, on the two occasions relied upon, instead of discharging him, the charterer induced him to continue in the service which he wished to terminate.

SAME (8). In such a case, instructions as to the character and conduct of the master are sufficient where they inform the jury that he could be discharged if his conduct caused injury to the business and if he failed to obey reasonable orders in carrying on the contract.

Appeal from a judgment of the superior court for King county, Ralston, J., entered February 13, 1923, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Tucker & Hyland, Ford Q. Elvidge,* and *Mary H. Alvord,* for appellant.

*Lloyd R. Savage,* for respondent.

PEMBERTON, J.—This action was instituted for the recovery of damages by reason of the breach of a contract of employment resulting from a dismissal of respondent by appellant. Respondent is the owner and captain of the gas boat "Service," and entered into a written contract whereby he chartered the boat to appellant for the period beginning April 15 and ending October 1, 1922, inclusive, for which he was to receive the sum of $30 a day. It was also provided in

[1]Reported in 221 Pac. 1.

the contract that respondent was to furnish the captain to operate the boat free of charge to appellant. It was the duty of the respondent to ship ice from Seattle to Neah Bay on the Straits of Juan de Fuca, or to Bamfield on Vancouver Island, and return to Seattle with a load of fish. Respondent continued to operate the boat under the terms of the contract during the summer of 1922, until on or about the 4th day of August, the time of his dismissal by appellant from further service.

Respondent asked judgment at the rate of $30 per day for seventy-two days, less the amount of $270 he had earned at other work after his discharge within the term of his employment; and further asked for the sum of $350 premium on a policy of marine insurance and interest under the terms of the contract whereby appellant was to pay the premium on certain insurance.

The answer of appellant admitted the contract, denied the other material allegations of the complaint, and as an affirmative defense alleged that respondent had misrepresented the speed capacity of the boat and its ability to perform its requirements under the contract, and further alleged:

"That the above named plaintiff so behaved himself on board of said vessel while he was in the employ of the defendant that it was impossible for him to keep a crew upon said vessel on account of his quarrelsome disposition, and his failure to obey the orders of the above named defendant.

"That the above named plaintiff refused to obey the orders of the defendant, particularly in regard to where said vessel was to go and when it was to go.

"That the plaintiff continuously quarreled with the other employes of the defendant, and with the employes of the scows used to transport fish; quarreled with the customers of the defendant so that it was

impossible for the defendant to use the said plaintiff and said vessel in the manner that he had expected to use it according to the charter party, and the said plaintiff by his said actions made it practically impossible for the defendant to carry on its fishing business, in which business the said boat 'Service' was in daily use, and which was absolutely necessary for the carrying on of said defendant's business. All of the above named facts the plaintiff well knew, and for the aforesaid reasons the above named defendant discharged the plaintiff and refused longer to employ the said vessel.''

The answer admitted that there was due on insurance $182.50, but claimed that there was due from the respondent to appellant for various items the sum of $116.47, leaving a balance due to the respondent in the amount of $66.03. Respondent in its reply denied the allegations of the answer.

The jury returned a verdict in favor of the respondent in the amount of $2,287.54. Upon a motion for a new trial, the verdict was reduced by the trial court to the sum of $1,600 and judgment entered therefor, from which judgment this appeal is taken.

The appellant relies upon two grounds for reversal. First, it is insisted that, under the undisputed evidence, appellant was justified in dismissing respondent and terminating the contract; and second, that in the alternative a new trial should have been granted for the reason that the verdict is not sustained by the evidence and because the court erred in its instructions to the jury.

It appears that, on one occasion after the fish from the boat had been unloaded, the customer refused to take them; and Mr. Young, the president and treasurer of the appellant company, requested respondent to take the fish to another dock in Seattle. Mr. Young testified that,

"He flew into a rage and hollered and jumped and used all the language that you ever heard a man use in your life. . . . It was obscene, coarse and vulgar. Indecent, ungentlemanly and everything else that way. There was no word that he could use that was too vile. . . . He threatened and ordered me off the boat. He said he would throw any —— out of the boat that come and told him what to do."

The witness then says that he employed a truck to move the salmon. Speaking of respondent he said: "He wanted to quit. He wanted his pay right then and there." He was then asked if Mr. Tanggard "patched that up." "A. He asked him—he said—told him what a good man he was." Mr. Tanggard stated that "Captain Isakson said 'I am through. You can pay me off.' I talked him out of the notion."

Forty-one days thereafter a further difficulty arose. Concerning this Mr. Tanggard testified as follows:

"The next time I had any difficulty with him was on the 26th day of July when I received a telegram from Captain Isakson at Neah Bay. I received two telegrams. One from Captain Isakson and one from Mr. Soderberg, both in five minutes of each other. Isakson said, 'I am in a row with the crew at Neah Bay.' Soderberg said 'come to Neah Bay.' The next morning I arrived at Neah Bay. Isakson's boat had arrived the previous morning. When I arrived at Neah Bay they had not removed the hatches—had not taken the hatches off—had not unloaded any ice whatever. Everybody was in a state of anger. Nobody was working. The captain's time was going on. I was paying him thirty dollars a day and paying for his oil and groceries. . . . I asked the captain to take the ice off the boat and why he had refused to do it before. He said he wouldn't do it unless we furnished other help to take it off additional. The ice was there in the boat in the process of melting and everything in a perfect standstill. I took it up with Mr. Soderberg, and he told me that he didn't have a man on the scow that would work for Isakson. . . . Q. Was there

any reason given you why the men on the scow would not work for Isakson on the boat? A. Because he had been so abusive and insulting and profane in his row with them the day before that they absolutely would have nothing to do with him. Q. Then what was done next following that? A. 1 told Captain Isakson that day to proceed to Bamfield and tow a scow that we had there and some oil drums to Seattle.''

The appellant requested the following instruction:

''I instruct you that it was implied in the charter contract and agreement introduced in evidence in this case and by the terms of the employment of the plaintiff by the defendant thereunder, that the plaintiff should conduct himself while carrying out the terms of the contract with ordinary decency and not in a quarrelsome manner and if you find that the plaintiff while pursuing his duties in connection with the fulfillment of the contract of service did not conduct himself with ordinary decency but was unnecessarily quarrelsome, that the defendant would have a right to discharge him and to terminate the contract and that if it did discharge the plaintiff and terminate the contract under such circumstances the defendant will not be liable for damages for breach of the contract hereunder.''

This instruction was refused and in place of it the court gave the following instruction:

''I instruct you that it was implied in the charter contract or agreement introduced in evidence in this cause and by the terms of the employment of the plaintiff by the defendant therein that the plaintiff should conduct himself while carrying out the terms of the contract with ordinary decency and not in a quarrelsome manner. If you find that the conduct of the said plaintiff was the cause of or did cause the defendant injury to his business then the defendant would have the right to discharge him and terminate the contract, and if the said defendant did discharge the plaintiff under such circumstances the plaintiff would not be entitled to recover.''

It is claimed by appellant that, under this instruction, the character and the conduct of respondent were immaterial so long as no injury resulted to the business of appellant and that this is contrary to our holding in *Moynahan v. Interstate Min. etc. Co.*, 31 Wash. 417, 72 Pac. 81. The instruction, however, calls to the attention of the jury the fact that the respondent should conduct himself while carrying out the terms of the contract with ordinary decency and not in a quarrelsome manner and that he could be discharged if his conduct caused injury to the business of appellant. In instruction number 7, the court told the jury that appellant had a right to discharge respondent if he,

". . . failed or refused to obey the reasonable orders of the defendant in this case, or failed to carry out and fulfill the reasonable instructions of the defendant in this case while carrying on the contract which has been admitted in evidence."

The testimony in this case offered by appellant shows that, when the trouble arose in Seattle, respondent desired to discontinue his services with appellant company, and they persuaded him to continue in their employ and told him that he was a good man. When the trouble arose at Neah Bay, instead of dismissing respondent, they directed him to proceed to Bamfield to tow a scow and kept him in their service for eight days thereafter. It would seem that both acts complained of were waived and condoned. *Clark v. West*, 193 N. Y. 349, 86 N. E. 1; *A. Z. A. Realty Corporation v. Harrigan's Cafe*, 113 Misc. Rep. 141, 185 N. Y. Supp. 212; *Alsens American Portland Cement Works v. Degnon Contracting Co.*, 222 N. Y. 34, 118 N. E. 210. Were we to hold that appellant had not waived or condoned the conduct of respondent by continuing him in its service, the question as to whether or not the behavior and abusive language constitute sufficient

ground for discharge is a question of fact for the jury and not for the court. The trial court properly denied the motion for judgment notwithstanding the verdict.

It is contended that the verdict is the result of passion and prejudice and a new trial should have been granted instead of reducing the verdict, relying on the case of *Olson v. Northern Pac. R. Co.,* 49 Wash. 626, 96 Pac. 150, 18 L. R. A. (N. S.) 209, where we said:

"We might follow our usual practice and reduce the judgment to such sum as the respondent is entitled to recover in our view of the facts, and require him to accept that amount or submit to a new trial, but the right of recovery is doubtful at best, and the verdict discloses such passion and prejudice on the part of the jury that it would be unjust to hold a litigant foreclosed by any of the findings. The judgment is therefore reversed and the cause remanded for a new trial."

The trial court upon the consent of the respondent properly reduced the verdict to $1,600. There is nothing in this case that indicates that the verdict was the result of passion or prejudice of the jury.

The judgment will be affirmed.

MAIN, C. J., MITCHELL, FULLERTON, and BRIDGES, JJ., concur.