CHARLES F. NOYES, Landlord, Respondent, *v.* MAX ROTHFELD, Tenant, Appellant.

Supreme Court, Appellate Term, First Department, December 18, 1947.

*Irving L. Kalish* for respondent.

*Sigmund Moses* for appellant.

Municipal Court of the City of New York, Borough of Manhattan, September 5, 1947.

*Irving Kalish* for landlord.

*Sigmund Moses* for tenant.

SCHWEITZER, J. This is a summary proceeding instituted by the landlord to recover possession of premises occupied by this tenant. The landlord's claim to possession is predicated upon his alleged intention to demolish the existing structure on the premises and erect thereon a new building, the plans having been approved by the proper authorities (Commercial Rent Law, § 8, subd. [c]; L. 1945, ch. 3, as amd.). The tenant is concededly in possession under a lease, which contains the following clause:

" In the event of the sale of the demised premises the Landlord may cancel this lease and the term hereby demised on March 1, 1946 or at any time thereafter by giving to the Tenant ninety (90) days prior notice of intention so to do, and making the following payments to the Tenant:

" If the landlord shall give such notice and the cancellation shall take effect during the second year of the term hereby demised, that is to say, at any time between March 1, 1946 and February 28, 1947, the Landlord shall pay to the Tenant on such expiration the sum of $300.00.

" If the Landlord shall give such notice and the cancellation shall take effect during the third year of the term hereby demised, that is to say, at any time between March 1, 1947 and February 29, 1948, the Landlord shall pay to the Tenant on such expiration the sum of $200.00.

" If the Landlord shall give such notice to the Tenant as aforesaid, then upon the ninetieth day following the giving of such notice this lease and the term hereby demised shall terminate and expire with the same force and effect as if said ninetieth day following the giving of such notice were the day herein definitely fixed for the expiration of the term hereby demised."

The tenant resists the landlord's claim on three grounds. First, the landlord has failed to comply with the provision of the lease pertaining to the manner in which the same shall be terminated. Second, that the landlord has failed to prove that he intends to erect a " new building " on the premises in conformance with the requirements of the statute. Third, that the landlord has failed to prove that he intends in *good faith* to demolish the existing structure and erect a " new building " thereon, as required by the statute.

The testimony adduced at the trial satisfies this court that this landlord has complied satisfactorily with the requirements of the conditional limitation in the lease with respect to the termination thereof. The covenant obviously runs with the land and is available to this landlord-grantee. The notice served upon the tenant, although exceeding the ninety days set forth in the lease, complies in all other respects with the requirements set forth therein, and in the opinion of this court the landlord has validly exercised the right given him to terminate. (*Burnee Corp.* v. *Uneeda Pure Orange Drink Co., Inc.*, 132 Misc. 435; *507 Madison Avenue Realty Co., Inc.*, v. *Martin*, 200 App. Div. 146, affd. 233 N. Y. 683; *Kolasky* v. *Michels*, 120 N. Y. 635.)

Nor should the tenant be heard to complain that more than ninety days' notice of the landlord's intention to terminate the

lease was given, since this court cannot conceive of any prejudice which inured to the tenant by reason of such longer notice. No such prejudice was claimed, nor was any proved at the trial. (*Matter of Balducci* v. *Rakov*, 195 App. Div. 52.)

Satisfactory proof was also adduced by the landlord that a tender of the amount due to the tenant was duly made in compliance with the terms of the lease. (*A. Z. A. Realty Corp.* v. *Harrigan's Cafe, Inc.*, 113 Misc. 141.)

The court is in accord with the tenant's contention that unless the landlord can prove that he intends to erect a " new building " on the premises his petition must necessarily be denied. The testimony with respect to this is that a new building permit was duly filed with the department of housing and buildings of the city of New York and that a permit for such erection was granted and the plans therefor were approved. The uncontradicted testimony is also to the effect that the entire premises are to be destroyed, with the exception of the two side walls, and that as to the existing side walls they were to be lengthened approximately fifty feet. In addition, the height of the floors in the new building was to be greater and an entirely new structure, all of new materials was to be erected in conformance with the plans submitted by the landlord. It is the tenant's contention that the retention of the two existing side walls destroys the landlord's claim that it intends to erect a new building and that in effect it is nothing more than an alteration.

An examination of the language of the statute reveals that the Legislature had in mind but one purpose, that is, to create increased commercial space. To fully comprehend the motive of the Legislature in enacting this section, the court quotes from the Report of the New York State Joint Legislative Committee to Study Rents, which report is dated March 20, 1946 (N. Y. Legis. Doc., 1946, No. 46, p. 13): " The prime cause of the shortage of commercial and business space has been the stoppage of building construction brought about by the need of building materials for many war uses. The shortage can be relieved only by new construction. The Committee believes that anything which it is capable of doing should be done to encourage new construction, thereby shortening the time during which unusual controls must be applied. The Committee, therefore, urgently recommends the exemption of new construction from the controls and regulations imposed by the emergency legislation."

It has been repeatedly held that words in a statute should be taken in their usual sense in which they are understood by people generally. Fitting this rule of construction into the facts at

bar it shows that the structure in question constitutes a "new building" within the meaning of the section. The court must accord that interpretation to the statute which best gives effect to the intention of the Legislature when it enacted such statute, and since the results to be obtained by the structure to be erected are those desired by the Legislature, this court necessarily concludes that the landlord has complied insofar as the erection of a new building is concerned. Any other interpretation of the statute would be an unwarranted assault upon the intention of the Legislature and would in effect carry out an absurd conclusion.

The word "alter" as defined in Black's Dictionary means "To make a change in; to modify; to vary in some degree; to change some of the elements or ingredients or details without substituting an entire new thing or destroying the identity of the thing affected." It would seem, therefore, that an alteration in a building is a change or variance in the form or nature of a building, without in any manner destroying its identity. The actual identity of the structure is preserved, although the form or nature of it may have been modified or changed.

Applying this test to the existing facts, it appears beyond any doubt that the plan submitted by the landlord, and duly approved by the proper authorities, embody a structure which far transcends the pale of an alteration, and assumes what legally is constituted a "new building". (*Brill* v. *Miller*, 140 App. Div. 602.)

There is a long line of cases, outside of the State of New York, where the very question has arisen under statutes defining rights under mechanics' liens. The case most often cited and which appears to be particularly applicable to the facts at bar is *Warren* v. *Freeman* (187 Pa. 455). There, the court said: "'Newness of structure in the main mass of the building — that entire change of external appearance which denotes a different building from that which gave place to it, though some parts of the old may have entered into it — is that which constitutes a new building, as distinguished from one altered or repaired.'"

So, also, in *Armstrong* v. *Ware* (20 Pa. 519), the court had before it the interpretation of a mechanic's lien statute, which conferred a lien on "every building erected" by a builder. The defendant resisted the plaintiff's claim of a lien on the ground that the work was an alteration and that there was not erected as a result of the plaintiff's work a new building within the meaning of the statute. Just as in the instant case, the roof was taken off, the entire building demolished, all materials removed excepting that in this case the plaintiff retained the

three brick walls; that is, two side walls and one back wall. A new front wall was put up and the side walls were lengthened. The higher court in reversing a dismissal of the plaintiff's complaint held, that to hold that the work done by the plaintiff to be an alteration, because old materials were used, would be unreasonable. It used this most significant language (p. 520): "A saddle may be new, though old stirrups, and even some leather of the old one, be used in making it. A sawmill may be new though it has an old water-wheel or forebay. Where the structure of a building is so completely changed that, in common parlance, it may be properly called a new building or a rebuilding, it comes within the lien law."

The principles enunciated in the foregoing cases have been followed and cited with approval in the following cases: *Home Bldg. & Loan Assn.* v. *White* (141 Okla. 240), *Brice's Appeal* (89 Pa. 85), *State (Delione)* v. *Long Branch Commissioners* (55 N. J. L. 108), *Miller* v. *Hershey* (59 Pa. 64) and *Washtenaw Lumber Co.* v. *Belding* (233 Mich. 608).

The tenant finally complains that the landlord has failed to prove his good faith in seeking to recover possession for the purpose of demolishing the existing structure and erecting a new building on the premises. While, it is true that the landlord may have failed to use the exact language of the statute, sufficient has been adduced to satisfy this court by a fair preponderance of the evidence that the landlord does intend in good faith to recover possession for the purposes stated in his petition. I do not believe that it is necessary that the exact language of the statute be used where ample proof is submitted to lead this court to conclude that the landlord does honestly intend to comply with the provisions of the statute. It certainly is better proof for a landlord to submit all of the facts supporting his claim of good faith, upon which a court may reasonably deduce a sincerity of purpose rather than have him testify to the bare assertion that he intends in good faith to demolish and construct as required by the statute.

It follows, therefore, that the landlord has sustained the burden of proof by a fair preponderance of the evidence, that he has complied with the pertinent section of the statute in question permitting him to gain possession of his premises and a final order is awarded to the landlord on the merits.

Evidence on a stay having been taken, the warrant may issue, but the execution shall be stayed up to and including October 31, 1947, upon condition that the tenant shall pay rent as and for use and occupation during the period of the stay granted herein.